COMMONWEALTH vs. WAYNE R. L'ABBE.

Essex. September 13, 1995. - November 8, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Competency to stand trial, Presumptions and burden
of proof, Presence of defendant, Admissions and confessions, Capital
case. *Due Process of Law,* Competency to stand trial. *Constitutional
Law,* Confrontation of witnesses, Waiver of constitutional rights. *Evidence,* Admissions and confessions.

Evidence at a criminal proceeding warranted the judge's finding that the
defendant was competent to stand trial, that is, that he was able to
understand the nature and object of the proceedings against him and to
assist his counsel in his defense. [266-267]
The court stated that the standard for competency of a criminal defendant
to waive presence at trial is the same standard as the competency required to waive the right to counsel and plead guilty, that is, that the
waiver be knowing and voluntary. [267-269]
At a murder trial, after conducting several competency hearings, the judge
did not err in accepting, as knowing and intelligent, the defendant's
waiver of his right to be present at trial. [269]
A criminal defendant may waive his right to be present at a capital trial.
[269-270]
In a criminal case, the judge correctly denied the defendant's motion to
suppress inculpatory statements the defendant made at the time of his
arrest, where the judge found that the statements were free and voluntary acts and that the defendant had made a knowing, intelligent, and
voluntary waiver of his Miranda rights. [270]
No reason appeared on the record of a capital case to warrant this court's
exercise of its power to grant relief under G. L. c. 278, § 33E, to reduce
a conviction of first degree murder or to grant a new trial. [270-271]

INDICTMENT found and returned in the Superior Court Department on June 5, 1991.

Hearings on the defendant's competency to stand trial
were held before *J. Harold Flannery,* J., and *Patti B. Saris,*

J., and, after a pretrial motion to suppress evidence was heard by *Saris*, J., the case was tried before her.

*Alan Jay Black* for the defendant.

*Margaret J. Perry*, Assistant District Attorney (*Frederick B. McAlary*, Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. The defendant, Wayne R. L'Abbe, was convicted by a jury of murder in the first degree and given the mandatory sentence of life imprisonment. On appeal, he claims that: (1) he was not competent to stand trial; (2) he was not competent to waive his own presence at trial; (3) presence at trial is not waivable in a capital case; (4) his motion to suppress certain evidence should not have been denied; and (5) this court should exercise its power under G. L. c. 278, § 33E (1994 ed.), to reduce his murder conviction or order a new trial. We affirm the conviction and offer no relief under G. L. c. 278, § 33E.

The first assessment of the defendant's competence to stand trial was made after a hearing on October 5, 1992. A Superior Court judge concluded that the defendant was competent to stand trial and issued a memorandum and order. The defense moved for a continuance in order to permit a defense psychiatrist to perform a psychiatric evaluation of the defendant.

On November 16, 1992, the defendant filed a pro se motion seeking substitute counsel. The defense attorney subsequently moved for permission to withdraw. Another judge scheduled a hearing on the motion and after a discussion with the defendant and his attorney, she denied both requests. On or about November 30, 1992, the defendant filed a motion to waive counsel and proceed pro se. On December 7, the judge held a hearing on the motion to waive counsel, and took psychiatric testimony on the defendant's competency to stand trial and to waive counsel.

On December 9, 1992, the judge, sua sponte, held another competency hearing, after which she again concluded that the defendant was competent to stand trial; however, she expressed doubt as to whether he could represent himself ade-

quately due to the likelihood that he would break down under the stress of trial. At the judge's suggestion, the defendant deferred his request to waive counsel until after a hearing scheduled for the next day.

A hearing was held on the defendant's motion to suppress certain statements made by him during his initial interviews with the police, as well as physical evidence seized from his truck. During the suppression hearing, the defendant had an emotional outburst, after which he refused to return to the courtroom. The court psychiatrist then evaluated the defendant. Based on this evaluation the judge concluded that the defendant was competent both to absent himself from the hearing and to stand trial. The judge found that the defendant knowingly and intelligently waived his Miranda rights and that his statements were voluntary. The judge granted the motion to suppress the physical evidence found in the truck.

Empanelment began on December 11, 1992. The defendant was present with counsel and asked to be returned to Bridgewater State Hospital during the trial. The judge held a colloquy with the defendant, after which she again concluded that the defendant was competent to waive his right to be present at trial, and that his waiver was knowing, voluntary, and intelligent. The defendant agreed to be represented by counsel for the remainder of the trial, waiving his right to proceed pro se. The judge gave the defendant the option of remaining in the courtroom, going to a room behind the courtroom to view the proceedings through video equipment, or to remain downstairs in the courthouse. The defendant chose to stay downstairs. The defendant left, and a jury were empaneled.

On December 14, 1992, the court reconvened and the defendant asked the judge to empanel a new jury in his presence. After a new jury were empaneled and sworn in, the defendant asked to be absent for the remainder of the trial. The judge held a separate colloquy to determine whether the waiver of presence was voluntary and intelligent: the defendant signed a written waiver notice, and the judge then per-

mitted the defendant to leave the courtroom. The jury were specially instructed not to speculate on the reason for the defendant's absence. They were told it had nothing to do with any disruptive conduct and not to draw any inference of guilt from it.

Every morning of the trial, the judge held a separate colloquy with the defendant and obtained a written waiver of his right to be present. After the jury convicted the defendant of murder in the first degree with deliberate premeditation and with extreme atrocity or cruelty, the defendant filed a timely notice of appeal.

We briefly summarize the facts as the jury could have found them. The victim was a former girl friend of the defendant. At the time of her murder, the victim had ceased having a romantic relationship with the defendant and they were "friends." He had twice tried to give her a "preengagement ring," which she refused. He bought her a "friendship ring," which she accepted. On Friday, April 26, 1991, the defendant bought a bus ticket and visited the victim at her place of employment for lunch. She requested that he return her bicycle. That evening, the defendant returned the bicycle and asked that the victim drive him home. She did so. At the defendant's house, she waited in her automobile while he went into the house to look for the receipt for the ring he had given her so she could have it sized. He then went to his truck and took out a "survival knife" with a five and one-half inch blade that he had bought from his brother one month earlier. He returned to the automobile and stabbed the victim over forty times in the neck, back, chest, lungs, and heart.

The defendant then drove the victim's automobile to Logan Airport. He went to the central parking lot at the airport, parked the car, and put towels from the automobile over the victim's body. He then took the subway train to the bus station and took a bus to New York City, Kansas, and Oklahoma. He had about $800. In Wichita, Kansas, the defendant sent a postcard to his brother to tell the State police where the victim's automobile was located. He then went to

Las Vegas where he was identified and arrested by a special agent of the Federal Bureau of Investigation.

1. *Competency to stand trial.* The defendant's first claim is that he was not competent to stand trial. As the judge's memorandum and order indicates, she conducted an exhaustive examination into the competency of the defendant. Competency to stand trial requires that the defendant have the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. *Commonwealth* v. *Crowley*, 393 Mass. 393, 398 (1984), quoting *Dusky* v. *United States*, 362 U.S. 402 (1960). The burden of proof is on the Commonwealth to show that the defendant is competent. *Crowley*, *supra* at 400. The judge found, and the defendant did not dispute, that he understood fully and rationally the proceedings against him. The disputed issue is whether he had the capacity to consult with his lawyer and to assist in preparing his defense.

The defendant argues that, because he was unable to discuss the details surrounding the stabbing with counsel or with psychiatrists, he was not able to assist adequately in his defense. A competency hearing must be held "where there exists doubt as to whether the defendant satisfies the [*Dusky*] test." *Crowley*, *supra* at 398, quoting *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). In the present case, there were three competency hearings, including one which the judge called sua sponte. The judge based her findings of competency on relevant factors: her observations, the psychiatric testimony of Dr. David Rosengard and Dr. David Swenson, the original competency evaluation of Dr. Wesley Profit, and her own colloquies with the defendant. *Commonwealth* v. *Hill*, 375 Mass. 50, 54-55 (1978). Every psychiatrist or psychologist who testified in connection with this case found the defendant competent to stand trial under both aspects of the *Dusky* test.

The judge's determination that the defendant was competent to stand trial was within her discretion. See *Commonwealth* v. *DeMinico*, 408 Mass. 230, 234-235 (1990) (de-

fendant competent to stand trial despite testimony during trial that defendant experiencing psychotic episode); *Commonwealth* v. *Kostka*, 370 Mass. 516, 522 (1976) (defendant competent despite some psychiatric testimony to contrary). Contra *Commonwealth* v. *Crowley*, *supra* at 395 (defendant suffering from chronic paranoid schizophrenia; burden of proof of incompetence had been on defendant). In the present case, the judge found that the defendant was:

> "unwilling to discuss certain things, and was suffering from reactive depression . . . [however] he had the capacity to cooperate in preparing his defense, and to assist defense counsel. For example, he was angry with his attorney for not subpoenaing certain defense character witnesses. He informed [defense counsel] of their identity, and at least one was called. Although initially he refused to participate in the jury impanelment, after his discussion with counsel, he changed his mind. The court observed him consulting with his attorney and making observations of the members of the venire."

"A 'defendant's demeanor at trial and response to questioning by the judge . . . [are] relevant to a decision on the merits of the competency issue.'" *Commonwealth* v. *DeMinico*, *supra* at 236, quoting *Commonwealth* v. *Hill*, *supra* at 58. The defendant was clearly upset about the events; however, we defer to the judge's finding that the defendant's "recalcitrance in refusing to cooperate with defense counsel fully reflects his personal 'agenda' of avoiding the painful confrontation with his own actions, not a lack of capacity to assist counsel." The evidence warranted the finding that the defendant was able to understand the nature and object of the proceedings against him and to assist his counsel in his defense.

2. *Competency to waive presence at trial.* The second issue on appeal before us is whether the judge erred in permitting the defendant to waive his right to be present in the courtroom, and if not, what level of competency should be re-

quired to waive this right. These are issues of first impression in this Commonwealth. The right to be present at all critical stages of criminal proceedings derives from the confrontation guarantees of the Sixth Amendment to the United States Constitution, the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, and art. 12 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Owens*, 414 Mass. 595, 602 (1993); *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 535 (1988). See also Mass. R. Crim. P. 18 (a), 378 Mass. 887 (1979). This is not an absolute right: the privilege of confrontation can be lost by consent or at times even by misconduct. *Commonwealth* v. *Flemmi*, 360 Mass. 693, 694 (1971), quoting *Snyder* v. *Massachusetts*, 291 U.S. 97, 106 (1934).

When a defendant pleads guilty to a criminal charge, he is effectively waiving three separate constitutional rights: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Godinez* v. *Moran*, 509 U.S. 389, 398 (1993). The United States Supreme Court in *Godinez* held that the competency required to plead guilty or to waive the right to assistance of counsel is no higher than that required to stand trial. Competence to waive a constitutional right also requires the determination that the waiver is knowing and voluntary. *Id.* at 400.

Although *Godinez* involved the right to waive the right to counsel and plead guilty, we see no compelling reason to establish a different standard for competency to waive presence at a criminal trial from that of pleading guilty.[1] Although we

---

[1]The defendant argues that the standard for competency to waive presence should conform to the standard required to waive counsel. Since the defendant was ably represented by counsel, we limit our discussion to competency for waiving presence, not waiver of counsel. We note, however, that the judge did apply a higher standard when evaluating the defendant's competence to waive the right to be present. The judge assumed for the purposes of argument that the standard of competency "is higher and different for waiver of the right to be present at trial, than for competency to stand trial." The judge found that the waiver is knowing and intelligent if the defendant is "capable of weighing the available alternatives and has a rational subjective appreciation of the decision and its consequences."

are free to adopt a higher competency standard under art. 12, *Commonwealth* v. *Aponte*, 391 Mass. 494, 506 (1984), we perceive no reason to do so.

In the present case, the judge held several separate competency hearings, both regarding defendant's competence to stand trial and his competence to waive counsel.[2] Furthermore, the judge engaged in a daily colloquy with the defendant and each day the defendant signed a statement regarding the voluntariness of his waiver of presence at trial. Therefore, we conclude that the judge did not err in accepting the defendant's waiver of his right to be present at trial.

3. *Right to waive presence at trial.* The defendant argues that his right to be present at a capital trial cannot be waived. We do not agree. In support of this position, the defendant relies on two Nineteenth Century Supreme Court decisions. See *Lewis* v. *United States*, 146 U.S. 370 (1892); *Hopt* v. *Utah*, 110 U.S. 574, 578-579 (1884). These decisions, as support for the proposition that a trial cannot continue in the defendant's absence, have been rejected by the Supreme Court in several noncapital cases. See *Taylor* v. *United States*, 414 U.S. 17, 18-19 (1973); *Illinois* v. *Allen*, 397 U.S. 337, 342, 346 (1970); *Diaz* v. *United States*, 223 U.S. 442, 455 (1912). Furthermore, in *Snyder* v. *Massachusetts, supra* at 106, the Court stated that the privilege to confront one's accusers "may be lost by consent or at times even by misconduct." We adopt the position of the United States Court of Appeals for the Ninth Circuit which, in deciding this issue, recently stated:

"There is no principled basis for limiting to noncapital offenses a defendant's ability knowingly, voluntarily, and intelligently to waive the right of presence. Nor do we find logic in the proposition that a right that may be

___

[2]The right to a competency hearing to establish the knowing and voluntariness of the waiver is necessary if there is evidence that raises a "bona fide doubt" as to the competency of the defendant. *Commonwealth* v. *Barnes*, 399 Mass. 385, 389 (1987). In the present case, the defendant's competence was established in several competency hearings.

waived by disruptive behavior cannot be waived by an affirmative petition freely made and based on informed judgment." *Campbell* v. *Wood*, 18 F.3d 662, 667 (9th Cir. 1994).

See also *Peede* v. *State*, 474 So. 2d 808, 814 (Fla. 1985) (defendant may waive right to be present at stages of capital trial). Cf. *Proffitt* v. *Wainwright*, 685 F.2d 1227, 1257 (11th Cir. 1982), cert. denied, 464 U.S. 1002, 1003 (1983) (presence at capital trial not waivable right).

We conclude, therefore, that the judge was correct in accepting the defendant's waiver of his right to be present during trial.

4. *Denial of motion to suppress.* The judge correctly denied the defense motion to suppress inculpatory statements made to officials at the time of his arrest. She found the defendant's statements were free and voluntary acts, and that he had made a knowing, intelligent, and voluntary waiver of his Miranda rights. In particular, the judge relied on the fact that the defendant was not under the influence of drugs or alcohol at the time of the statements, was not overly emotional, and generally appeared calm and normal. Furthermore, with respect to the questioning by State Trooper Mark S. Lynch, the defendant was alert enough to decline to answer certain questions. The judge also noted that the defendant was a high school graduate with an "all A" academic record, and there was no evidence that he was suffering from reactive depression while being questioned.

5. *General Laws c. 278, § 33E.* Finally, the defendant requests that we reduce his murder conviction or order a new trial. We have reviewed the entire record pursuant to G. L. c. 278, § 33E. There was evidence submitted that the victim was conscious and in great pain for some time during the attack. The defendant bought a survival knife weeks in advance and a bus ticket on the day of the stabbing. There was sufficient evidence of both premeditation and extreme atrocity or cruelty to warrant the jury's verdict. We see no reason

for relief under § 33E. *Commonwealth* v. *Phinney*, 416 Mass. 364, 375 & n.7 (1993).

*Judgment affirmed.*