# United States Court of Appeals
## For the First Circuit

No. 01-2557

WAYNE R. L'ABBE,

Petitioner, Appellant,

v.

PAUL DIPAOLO, Superintendent, MCI Norfolk,

Respondent, Appellee.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]


Before

Torruella, Circuit Judge,
B. Fletcher,* Senior Circuit Judge,
and Lipez, Circuit Judge.


Alan Jay Black, for petitioner, appellant.

Annette C. Benedetto, Assistant Attorney General, with whom
Thomas F. Reilly, Attorney General, and David O'Sullivan, Legal
Intern, were on brief, for respondent, appellee.


November 19, 2002


_____
*   Hon. Betty B. Fletcher, of the Ninth Circuit, sitting by
designation.

**LIPEZ, Circuit Judge**.  After a Massachusetts Superior Court jury convicted Wayne L'Abbe of first degree murder for the 1991 death of Cynthia S. Reid, he was sentenced to life imprisonment without the possibility of parole.  Having exhausted his state court appeals, L'Abbe petitioned the federal district court for habeas corpus relief under 28 U.S.C. § 2254, claiming that the trial court violated the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment by allowing him to waive his right to be present at his trial.[1]  The district court denied the petition, and we affirm.  The decision of the Massachusetts Supreme Judicial Court (SJC) affirming his conviction was neither contrary to, nor an unreasonable application of, clearly established federal law.

## I. BACKGROUND

In its opinion on L'Abbe's direct appeal, the SJC summarized the following facts, which the jury could have found to be true.  See Commonwealth v. L'Abbe, 656 N.E.2d 1242, 1244 (Mass. 1995).  On April 26, 1991, after they had ended their romantic relationship, the petitioner returned Cynthia Reid's bicycle to her and asked her to give him a ride back to his house.  Once there,

---

[1] As petitioner has made no argument that the Due Process Clause requires an analysis separate from that of the Sixth Amendment, we will decide the case solely on the grounds of whether the decision of the Massachusetts Supreme Judicial Court was contrary to, or an unreasonable application of, the Supreme Court's Sixth Amendment case law.

Reid waited in her car while the petitioner went into his house to look for a receipt for a gift he had given her. Returning to her car with a "survival knife," the petitioner stabbed Reid repeatedly in the neck, back, chest, lungs, and heart. He drove her car to the central parking lot at Logan Airport and parked it there, leaving her body inside covered with towels. He then fled to New York, Kansas, Oklahoma, and finally Nevada, where the F.B.I. arrested him.

After being indicted for murder, the petitioner moved to suppress certain statements he had made to the police, as well as physical evidence that had been seized from his truck. At a pretrial hearing on this motion, held a few days before the trial began, the petitioner "had an emotional outburst, after which he refused to return to the courtroom." Id. at 1243. The court psychiatrist evaluated the petitioner. Based on this evaluation, the judge found that the petitioner was competent to waive his right to presence, and she permitted him to remain outside the courtroom for the rest of the suppression hearing. Id. On the next day of court, which was set for jury empanelment, the petitioner again asked to be excused from the courtroom. The judge conducted a colloquy with the petitioner, and again determined that his waiver of presence was knowing and voluntary. She then excused the petitioner, and empaneled a jury in his absence. Id. On the next court day, the petitioner again appeared in court and

requested that a new jury be empaneled in his presence. The judge agreed, and empaneled and swore in a new jury. As soon as that process was completed, the petitioner again asked to be excused from court. The judge again agreed, after determining that the petitioner was intelligently waiving his right to presence. Id.

On each subsequent day of the trial, the petitioner appeared in court and asked if the court would excuse him from the proceedings. Every day the same procedure was repeated, with the judge conducting an extensive colloquy with the petitioner regarding his desire to absent himself from his trial. She asked him to sign a written waiver notice. Every day, the judge found L'Abbe was voluntarily and intelligently waiving his right to be present, and excused him from court. Id. The judge also instructed the jury not to speculate on the reasons for the petitioner's absence from the courtroom, telling them it had nothing to do with disruptive behavior and that it should have no effect on their determination of the petitioner's guilt or innocence. Id. at 1244. The jury found L'Abbe guilty of first degree murder.

The petitioner appealed his conviction to the SJC, claiming that he could not waive his right to be present at a capital trial.[2] The court affirmed his conviction, holding that

_____

[2] L'Abbe cited four other grounds for reversal in his state court appeal, none of which were successful, and none of which are at issue in this appeal. Id. at 1243.

the trial judge "was correct in accepting the defendant's waiver of his right to be present during trial." Id. at 1246. Petitioner filed a timely habeas petition in the district court for the District of Massachusetts, asserting the Sixth Amendment argument. The court held that the SJC's decision was neither contrary to, nor an unreasonable application of, federal law, and therefore found no grounds to issue the writ. Petitioner now appeals.

## II. THE HABEAS STANDARD

A federal court may grant habeas relief to a state prisoner if it finds, inter alia, that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law...." 28 U.S.C. § 2254(d)(1). Subsection (1) "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404-05 (2000). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." Id. at 405. A state court decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] cases but unreasonably applies it to the facts" of the prisoner's case, or if the state court either "unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. In either case, the state court's determination cannot simply be incorrect -- it must be unreasonable. Id. at 411.

The "threshold question" under § 2254(d)(1) is whether the petitioner "seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Id. at 390. The petitioner claims that under the Confrontation Clause of the Sixth Amendment, he could not waive presence at his capital trial. After reviewing the Supreme Court's decisions on the scope of the Confrontation Clause, we conclude that the Supreme Court has not clearly established an unwaivable right of presence at a capital trial. By contrast, we conclude that the Supreme Court has clearly established the principle that a defendant in a noncapital case can waive his right to be present at trial. We explain below the significance of these conclusions for the habeas analysis.

### III. THE CONFRONTATION CLAUSE

#### A. The SJC's decision

On direct appeal, the SJC addressed the petitioner's argument that he could not waive his right to be present at his capital trial. In his argument to that court, L'Abbe relied on two nineteenth-century Supreme Court cases, Lewis v. United States, 146

U.S. 370 (1892), and <u>Hopt</u> v. <u>Utah</u>, 110 U.S. 574 (1884), which suggested that there is a nonwaivable right of presence generally in a criminal case, for his argument that the right to presence is not waivable in a capital case. In response, the SJC found that the Supreme Court had rejected those holdings in subsequent noncapital cases. It then took notice of the Court's observation in <u>Snyder</u> v. <u>Massachusetts</u>, 291 U.S. 97 (1934), that "the privilege to confront one's accusers 'may be lost by consent or at times even by misconduct.'" <u>L'Abbe</u>, 656 N.E.2d at 1246 (quoting <u>Snyder</u>, 291 U.S. at 106). On this basis, the SJC found that there was no Supreme Court case holding that a defendant in a capital trial cannot also waive his right to presence. <u>L'Abbe</u>, 656 N.E.2d at 1246.

Looking to other courts that had addressed the same argument, the SJC agreed with the Ninth Circuit's decision in <u>Campbell</u> v. <u>Wood</u>, 18 F.3d 662 (9th Cir. 1994), that "[t]here is no principled basis for limiting to noncapital offenses a defendant's ability knowingly, voluntarily, and intelligently to waive the right of presence." <u>L'Abbe</u>, 656 N.E.2d at 1246 (quoting <u>Campbell</u>, 18 F.3d at 672) (internal quotation marks omitted). It therefore concluded that the trial judge did not err when she allowed L'Abbe to absent himself voluntarily and knowingly from his trial.[3]

_____

[3] In addressing his Sixth Amendment argument, the SJC treated L'Abbe as if he were a "capital" defendant. In Massachusetts, a defendant is charged with a capital crime if he is charged with

## B. "Contrary to ... clearly established Federal law"

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. Consequently, "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970) (citing Lewis v. United States, 146 U.S. 370 (1892)). This right, however, is not absolute. In Snyder, as already noted, the Court held that a defendant may lose his right to personally confront witnesses "by consent or at times even by misconduct." 291 U.S. at 106. Addressing the loss of this right in a number of factual situations, the Court held that the defendants involved could constitutionally waive their presence. See Taylor v. United States, 414 U.S. 17, 20 (1973) (upholding the constitutionality of Fed. R. Crim. P. 43, which provides that defendant's voluntary absence will not prevent continuing trial);

first-degree murder, even though the death penalty is not available. For the purpose of the constitutional analysis required here, petitioner urges us to define a capital offense as one for which a state imposes its most severe penalty -- life imprisonment without the possibility of parole, the sentence imposed on L'Abbe. The government argues that a capital offense within the federal meaning of the term requires death as a possible penalty. We need not decide that question. Instead, we will assume arguendo that L'Abbe's conviction of a crime punishable by the state's most severe penalty of life imprisonment without parole qualifies as a "capital" conviction as contemplated by the Supreme Court in its Sixth Amendment jurisprudence.

<u>Allen</u>, 397 U.S. at 343 (holding that a defendant can lose his right to be present at trial by engaging in disruptive behavior in the courtroom); <u>Diaz</u> v. <u>United States</u>, 223 U.S. 442, 455 (1912) (citing "prevailing rule" that a defendant who voluntarily absents himself from his trial waives his right to be present).

The petitioner maintains that the holdings in the above-cited cases do not bear directly on his case because (1) none of the defendants in the above-cited cases were being tried on <u>capital</u> charges, and (2) the defendant in <u>Allen</u> was too disruptive to remain in the courtroom. The petitioner insists that his Massachusetts charges should be considered capital charges, and that the Supreme Court has made clear that there is a "significant constitutional difference" between capital and noncapital trials, <u>see</u> <u>Beck</u> v. <u>Alabama</u>, 447 U.S. 625, 637 (1980). He adds that, unlike the defendant in <u>Allen</u>, he was not disruptive during the court session.

Although he argues these distinctions, the petitioner also acknowledges, as he must, that the Supreme Court has never directly ruled on the issue of whether a criminal defendant can waive his right to presence in a capital case. In fact, the Court specifically reserved this question in <u>Drope</u> v. <u>Missouri</u>: "Our resolution of the first issue ... makes it unnecessary to decide whether, as he contends, it was constitutionally impermissible to conduct the remainder of his trial on a capital offense in his ...

-9-

absence...." 420 U.S. 162, 182 (1975). The Court's own acknowledgment that the issue remains unresolved precludes any argument that the SJC's decision that a capital defendant in Massachusetts can waive his right to presence in a capital case was contrary to clearly established Supreme Court precedent.[4]

## C. "Unreasonable application of clearly established Federal law"

---

[4] At least one Court of Appeal has held that the Supreme Court's decisions in Diaz and Hopt established that a capital defendant cannot waive his right to presence. Proffitt v. Wainwright, 685 F.2d 1227, 1257 (11th Cir. 1982). Reviewing the case law, the Eleventh Circuit observed that these two "early Supreme Court cases" held that "the right to presence in capital cases is so fundamental that the defendant cannot waive it." Id. at 1257. The waiver the Court allowed in Allen for disruptive defendants, 397 U.S. at 346, authorized only a "limited exception to the no-waiver rule...." Proffitt, 685 F.2d at 1257. For a defendant who has not been so disruptive that the judge had to remove him, the court held, the traditional no-waiver rule governs. Id. at 1258.

We disagree with this analysis. As discussed above, a number of later Supreme Court cases sow doubt that the "broad dicta" of Hopt limits waiver to only noncapital defendants. Allen, 397 U.S. at 342; see also Snyder, 291 U.S. at 117 n.2 ("What was said in Hopt v. Utah ... on the subject of the presence of a defendant was dictum, and no more."). These subsequent interpretations of the right to presence, along with the explicit reservation of the question in Drope, 420 U.S. at 182, preclude any conclusion that Hopt clearly establishes a defendant's nonwaivable right to presence at a capital trial. Moreover, there are numerous authorities that agree with the SJC that a capital defendant can voluntarily waive his confrontation right at certain stages of his trial. See Campbell, 18 F.3d 662, 671-72 (jury empanelling); State v. Amaya-Ruiz, 800 P.2d 1260, 1283 (Ariz. 1990) (presentence hearing); People v. Robertson, 767 P.2d 1109, 1133-34 (Cal. 1989) (sentence reduction hearing); Peede v. State, 474 So.2d 808, 811-15 (Fla. 1985) (trial); cf. 3A Charles Alan Wright, Federal Practice and Procedure § 723, at 18 n.2 (2d ed. 1982) ("The clear implication of Illinois v. Allen is that even in a capital case a defendant who disrupts the courtroom may, if the court chooses, be excluded from the trial.").

Even if a court reviewing a habeas petition finds that a state court decision was not "contrary to" clearly established law, it still must reach the question of whether the state court decision "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Williams, 529 U.S. at 404-05. Although the Court has not ruled on whether a capital defendant can voluntarily waive his right to presence, it is long established that a noncapital defendant can do so. See Diaz, 223 U.S. at 455. The Court has also ruled that a defendant can lose his right to be present at his trial if his behavior is so disruptive to the process "that his trial cannot be carried on with him in the courtroom." See Allen, 397 U.S. at 342-43. The outstanding question, then, is whether the SJC's extension of these principles to the petitioner's "capital" case was "unreasonable."

An "unreasonable application" of precedent "is different from an incorrect or erroneous application." Williams, 529 U.S. at 412 (emphasis omitted). In McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002), we concluded that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." Id. Although the court will require some increment of incorrectness beyond error, "[t]he increment need not necessarily be great, but it must be great

-11-

enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id.

The petitioner argued that the facts of his case are fundamentally different from those presented in Diaz, Allen or Taylor. He was being tried on capital charges, and he neither disrupted the court proceedings nor absconded during trial without warning. The petitioner "merely asked not to be present," thereby leaving the court the choice of whether to excuse him, or to force him to remain in court and wait to see what happened. In rejecting the defendant's argument that the trial court's decision was in error, the SJC adopted the Ninth Circuit's language as its own:

> There is no principled basis for limiting to noncapital offenses a defendant's ability knowingly, voluntarily, and intelligently to waive the right of presence. Nor do we find logic in the proposition that a right that may be waived by disruptive behavior cannot be waived by an affirmative petition freely made and based on informed judgment.

L'Abbe, 656 N.E.2d at 1246 (citing Campbell, 18 F.3d at 672). Far from being an unreasonable application of federal law, this proposition is eminently sensible, as demonstrated by the facts of this case.

L'Abbe insisted that he would become disruptive if forced to sit through his trial. If the court could not have granted his request to absent himself, after the thorough inquiry the court pursued each day, it would have had to wait until he actually

-12-

became disruptive, and perhaps discredited himself in the eyes of the jury by such behavior. Moreover, there might have been the spectacle of forcible removal from the courtroom, or of a defendant physically restrained in his seat. As the Court recognized in <u>Allen</u>, "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." 397 U.S. at 343.

In L'Abbe's trial, the judge gave voice to L'Abbe's choice to absent himself from the trial. The SJC recognized that in the circumstances of this case, there was no reason to limit the right of a voluntary and knowing waiver of presence to noncapital defendants. There was nothing unreasonable about the extension of the principle of waiver of presence, well-established in the noncapital context, to this capital case. Accordingly, the district court's decision denying the writ is **AFFIRMED.**

So ordered.