[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 15, 2003
THOMAS K. KAHN
CLERK

No. 02-11302

D. C. Docket No. 99-02693 CV-G-M

CAYCE COLLINS MOORE,

Petitioner-Appellant
Cross-Appellee,

versus

DONAL CAMPBELL, ATTORNEY
GENERAL FOR THE STATE OF
ALABAMA,

Respondents-Appellees
Cross-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(September 15, 2003)**

Before EDMONDSON, Chief Judge, KRAVITCH and GIBSON[*], Circuit Judges.

_____

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

PER CURIAM:

Cayce Moore appeals the district court's denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. The State of Alabama ("the State") cross-appeals the district court's determinations that Moore's habeas petition was not time-barred and that Moore's claims were not procedurally barred. We affirm the district court's denial of Moore's habeas petition.[1]

## I. BACKGROUND

After being charged with capital murder, Moore entered a plea of not guilty by reason of mental defect or disease. Before trial, mental health professionals examined Moore and found him competent to stand trial. Moore's trial began on 10 August 1987. On Monday, 17 August 1987, Moore's counsel informed the court that Moore had attempted suicide by taking a drug overdose. The trial court declared a recess in the trial to allow Moore to be treated. On 24 August 1987, Dr.

---

[1] The district court granted a certificate of appealability ("COA"), but failed to specify the issues for appellate review. Although we could remand to the district court with instructions to specify the issues, we choose to decide ourselves which issues are worthy of COA. See Peoples v. Haley, 227 F.3d 1342, 1346 (11th Cir. 2000). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Upon review of the record and the district court's opinion, we conclude that Moore has made the requisite showing for each of the claims raised in his brief. We therefore address each of these issues below.

2

Claudio Toro, the psychiatrist treating Moore, wrote a letter warning the trial court that Moore was depressed and a high suicide risk. At about this same time, the district court ordered that Moore be examined to determine his competency to stand trial. Dr. Kamal Nagi, a psychiatrist, examined Moore and informed the trial court that Moore was competent to stand trial.[2]

The trial court granted the State's motion to revoke Moore's bond. On 27 August 1987, Moore was taken from the hospital to the St. Clair County Jail where he was placed on suicide watch. Moore's trial resumed on 31 August 1987. On the evening of 1 September 1987, Moore was taken to the hospital, treated for dehydration, and discharged about four-and-a-half hours later. On 4 September 1987, the jury convicted Moore of capital murder. Moore was sentenced to life imprisonment without parole.

On appeal, the Alabama Court of Criminal Appeals affirmed Moore's conviction and sentence. Moore v. State, 546 So.2d 404 (Ala. Crim. App. 1989). The Alabama Supreme Court denied Moore's petition for a writ of certiorari on 4 August 1989. Ex Parte Moore, 549 So.2d 1363 (Ala. 1989).

On 24 April 1997, Moore filed a petition for post-conviction relief in state court pursuant to Ala.R.Crim.P. 32. He alleged, among other things, that (1)

---

[2] It does not appear that Dr. Nagi filed a written report, and no competency hearing was held.

Moore was mentally incompetent during a portion of his capital murder trial, (2) the trial judge had substantial evidence before the court which raised a reasonable doubt about Moore's competency to stand trial and, therefore, should have held a hearing on its own motion, and (3) Moore's counsel rendered ineffective assistance by failing to request a competency hearing and by failing to appeal the trial court's failure to hold a competency hearing.

On 16 October 1998, the state court held an evidentiary hearing on Moore's Rule 32 petition. Moore presented witnesses and submitted evidence for the state court's consideration.

Raymond Chapman, the "head trusty" at the county jail during Moore's trial, testified that Chapman and the other inmates were assigned to watch Moore to ensure that he would not attempt suicide. Chapman stated that, from Moore's arrival on 27 August 1987 until Moore was taken to the hospital on 1 September 1987, he did not observe Moore consume food or drink. Chapman testified that when Moore's trial resumed on 31 August 1987, he had to help Moore bathe and dress for court. That evening, the sheriff took Moore to a local physician, Dr. Norrell. According to Dr. Norell's records, Moore had "refused to take food or fluids for four days" and "refused [an] injection [of] B-12."

4

On 1 September 1987, Chapman again bathed and dressed Moore for court. Chapman stated that, when Moore returned from court, he was in the same condition and was not talking to anyone. Later that evening, Moore was found lying unconscious on the floor of his cell. Moore was taken to the hospital.

Jean Moore, Moore's mother, testified that at the hospital Moore was "[a]lmost lifeless, pale -- not really responding to me." Jean Moore stated that, when she begged Moore to accept the medical treatment, he initially refused. Jean Moore testified that, when she asked Moore if he would drink some water, he responded "[w]e'll just go to the Galleria [a Birmingham shopping mall] and get some orange spice tea." Jean Moore said that she eventually talked Moore into accepting medical treatment.

Moore was nineteen at the time of the trial. At the Rule 32 hearing, Dr. James Lewis, an Assistant Professor of Medicine at the University of Alabama, testified that a healthy, nineteen year-old male who fails to eat or drink for several days will suffer some effects of dehydration or volume depletion. Dr. Lewis stated that dehydration can result in a person being listless, stuporous, confused, and disoriented. Dr. Lewis further testified that, if a person is dehydrated, it could also affect their ability to understand the events taking place around them and to engage in conversation.

5

Dr. Lewis stated that the emergency room physician's description of Moore as "listless" with "breath smelling of ketones" was consistent with someone who was dehydrated or volume depleted.[3]  Dr. Lewis further testified that, although not a positive conclusion, if someone did not eat or drink for four days, was listless, had breath smelling of ketones, and was weak and disoriented, Dr. Lewis would be led to a medical conclusion that the person was dehydrated or volume depleted. Dr. Lewis, however,  stated he would want to see a patient before initiating therapy.

At the Rule 32 hearing, Dr. Stanley Brodsky, a University of Alabama forensic psychology professor, testified that -- based on his post-trial interviews with Moore and review of available information (including newspaper articles about the trial, Moore's hospital records, Dr. Toro's psychological evaluation, and the expert testimony at trial) -- Moore was "seriously and substantially impaired [in] his ability to understand proceedings rationally; to consult with his attorneys and aid in his own defense" on 31 August and 1 September 1987.  Dr. Brodsky testified that Moore's mid-trial suicide attempt and later refusal to eat and drink

---

[3]  At the Rule 32 hearing, Moore submitted the affidavit of Dr. David Langille, the emergency room physician who treated Moore on 1 September 1987.  Dr. Langille averred that when the sheriff's deputies brought Moore to the emergency room, Moore appeared listless and his mouth smelled of ketones.  Dr. Langille diagnosed Moore as suffering from starvation ketosis, treated him for dehydration by administering several liters of fluids intravenously, and discharged Moore about four-and-a-half hours later.

were "absolutely consistent with the characteristics of a major depressive episode." Dr. Brodsky stated that it was not Moore's depression by itself that made Moore incompetent, but Moore's failure to eat or drink. Dr. Brodsky testified that he did not believe that Moore's refusal to eat or drink was an attempt to manipulate the trial, but instead the result of Moore's depression.[4]

In rebuttal, the State presented the testimony of a St. Clair County sheriff's deputy, the St. Clair County District Attorney, and Dr. Nagi.

Dr. Nagi testified that after Moore's drug overdose he evaluated Moore at the request of the trial judge. Dr. Nagi stated that Moore expressed concerns about receiving a fair trial in the venue where the trial was taking place and stated that he wanted the trial moved. Dr. Nagi testified that Moore told him "I'm very frustrated. What do you want me to do--shoot the jury to have it mistried?" Dr. Nagi testified that he concluded that Moore was competent to stand trial and

---

[4] At the Rule 32 hearing, Moore also presented the testimony of a news reporter and photographer, and submitted newspaper articles from the time of his trial which discussed Moore's hunger strike and his appearance. These witnesses testified that Moore appeared weak and "out of it." The newspaper reporter stated that she observed Moore's attorneys attempting to communicate with Moore, but that he was unresponsive. The newspaper articles indicated that Moore was weak and at times "disoriented."

informed the trial judge of this fact. Dr. Nagi stated that he was not aware that Moore later had restricted his intake of food and liquid.[5]

The state court found and concluded that Moore was competent to stand trial and was able to aid and assist his counsel in his defense. The state court also found that Moore "undertook a calculated and concerted effort to disrupt his capital murder trial." The state court concluded that Moore's asserted incompetence was similar to a disruptive defendant who is excluded from the courtroom and stated that "[o]ne whose own actions causes him to be absent from trial, cannot claim error." The Alabama Court of Criminal Appeals affirmed the denial of Moore's Rule 32 petition in a memorandum opinion, concluding that all of Moore's claims were time-barred and that his claims of substantive and procedural incompetency were also procedurally barred. Moore then petitioned the Alabama Supreme Court for a writ of certiorari.

While his petition for a writ of certiorari with the Alabama Supreme Court was pending, Moore filed a federal habeas petition pursuant to 28 U.S.C. § 2254

---

[5] The sheriff's deputy testified that, although Moore was weak and was assisted by the sheriff's deputies, Moore was able to walk on his own. The District Attorney testified that he observed Moore during the two days in question and remembered seeing Moore communicate with his attorneys. The District Attorney, however, could not recall whether he had observed Moore speaking with his attorneys on 31 August and 1 September 1987.

8

raising procedural and substantive competency claims and ineffective assistance of counsel claims.[6]

The State responded that Moore's habeas petition was time-barred and that Moore's claims were procedurally defaulted because they were raised outside Rule 32's two-year statute of limitations. The State further argued that Moore was entitled to no relief because he had failed to establish that he was incompetent and, regardless, any incompetence was self-induced.

A magistrate judge issued a report and recommendation. The magistrate judge first determined that Moore's federal habeas petition was timely. The magistrate judge next concluded that Moore's claims were not procedurally barred despite Moore's failure to raise his claims in state court within the two-year statute of limitations set out in Ala.R.Crim.P. 32.2(c). The magistrate judge determined that, because the jurisdictional nature of Rule 32.2(c) -- where the state had not affirmatively plead the timeliness defense -- was not "firmly established and regularly followed" at the time of Moore's Rule 32 proceeding, the claims were

---

[6] After filing his § 2254 petition, Moore moved in district court to stay the proceedings in federal court pending the outcome of his state Rule 32 proceedings. Moore sought the stay on the grounds that, once the Alabama Supreme Court ruled, he would have only one day to file his § 2254 petition and that it could take longer than one day for the notice of the Alabama Supreme Court's ruling to be received in the mail. The State did not object, and the district court granted the motion. The stay was lifted after the Alabama Supreme Court denied Moore's Rule 32 petition. The State in this case does not assert a failure-to-exhaust-state-remedies defense.

not procedurally barred under this rule. The magistrate concluded, however, that because Moore failed to raise his procedural claim (no competency hearing) at trial or on direct appeal, this claim was procedurally defaulted under Ala.R.Crim.P. 32.2(a)(3) and (5) unless Moore showed cause and prejudice.

The magistrate judge then considered whether Moore was able to establish that counsel's failure to raise the procedural incompetency claim on appeal established sufficient cause and prejudice to allow Moore to avoid the procedural bar. The magistrate judge noted that, if the Rule 32 court's determination that Moore was competent was correct, then trial and appellate counsel could not have been ineffective for failing to raise the issue.

The magistrate judge concluded that the state court's determination that Moore was competent throughout his trial was an unreasonable determination of the facts in the light of the evidence presented at the state court proceedings. But the magistrate judge also determined that, because Moore's incompetency was self-imposed, he forfeited his right to be competent during his trial and, therefore, neither trial nor appellate counsel was ineffective for failing to raise the issue. The magistrate judge also concluded that Moore's procedural claim -- that the trial court erred by failing to hold a competency hearing on its own motion -- was deficient because the evidence did not reflect that the trial court ignored facts

10

raising a "bona fide doubt" about Moore's competency to stand trial. The magistrate judge recommended that Moore's habeas petition be denied.

The district court adopted the magistrate judge's report and recommendation and denied Moore's habeas petition. Moore appeals. The State cross-appeals the district court's determinations that Moore's habeas petition was timely and that Moore's claims were not procedurally defaulted.

## II. DISCUSSION

### A. Time Bar

In its cross-appeal, the State argues that the district court erred by refusing to dismiss Moore's petition as untimely filed. The State asserts that this Court has consistently stated that the one-year grace period for filing federal habeas petitions expired on 23 April 1997. The State contends that the district court erred by applying Fed.R.Civ.P. 6(a) to determine the ending date of the "grace period" because Rule 6(a), by its own terms, does not apply to the court-created fixed date for filing petitions following the passage of Anti-Terrorism and Effective Death Penalty Act ("AEDPA").

11

We review de novo the district court's determination that Moore's federal petition for habeas corpus relief was not time barred. Bridges v. Johnson, 284 F.3d 1201, 1202 (11th Cir. 2002).

AEDPA imposed a one-year limitation period for filing a § 2254 petition. 28 U.S.C. § 2244(d). This Court concluded that prisoners whose convictions became final before the enactment of the AEDPA had to be given a "reasonable time" to file their habeas petitions. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1211 (11th Cir. 1998). We said that a reasonable period was until 23 April 1997: one year after the enactment of the AEDPA. See id.; see also Goodman v. United States, 151 F.3d 1335, 1337 (11th Cir. 1998) (28 U.S.C. § 2255).

In these decisions and the decisions that followed, no case, however, turned on the precise beginning or ending of the one-year limitation period; and it was unnecessary for us to consider whether Fed.R.Civ.P. 6(a) applied to the "one year from the date of the enactment" standard. Never have we held that a petition filed on 24 April 1997 in a case was barred as too late. Nor do our precedents actually make a choice between 23 April or 24 April as a deadline. Thus, our statements that a reasonable grace period was until 23 April 1997 are dicta if the statements are viewed as setting a hard-edged deadline; they do not control our decision

12

under Fed.R.Civ.P. 6(a) today. See generally United States ex rel. Southeastern Mun. Supply Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, 876 F.2d 92, 93 (11th Cir.1989) (stating that a case is authority only for what it actually decides).

The general rule for computing time limitations in federal courts is Federal Rule of Civil Procedure 6(a) which provides that "[i]n computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included." Fed.R.Civ.P. 6(a).

We have determined that, for petitioners whose convictions became final after the enactment of the AEDPA, Rule 6(a) applies to the calculation of the one-year statute of limitations. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). Although the one-year grace period pertinent in the present case is a judicially created extension of the effective date of the AEDPA, we agree with the other circuits that have considered this issue. We conclude that Rule 6(a) also applies to the effective date of the AEDPA. See United States v. Hurst, 322 F.3d 1256, 1261 & n. 4 (10th Cir. 2003); Newell v. Hanks, 283 F.3d 827, 833 (7th Cir. 2002); Hernandez v. Caldwell, 225 F.3d 435, 438-39 (4th Cir. 2000); Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001); Rogers v. United States, 180 F.3d

13

349, 355 & n. 13 (1st Cir. 1999); <u>Moore v. United States</u>, 173 F.3d 1131, 1133-35

(8th Cir. 1999); <u>Flanagan v. Johnson</u>, 154 F.3d 196, 200-02 (5th Cir. 1998);

<u>Mickens v. United States</u>, 148 F.3d 145, 148 (2d Cir. 1998); <u>see</u> <u>also</u> <u>Payton v.</u>

<u>Brigano</u>, 256 F.3d 405, 408 (6th Cir. 2001), <u>cert. denied</u>, 122 S.Ct. 1081 (2002)

(holding that the limitations period expired on April 24, 1997); <u>United States v.</u>

<u>Cicero</u>, 214 F.3d 199, 202 (D.C. Cir. 2000) (same). <u>See</u> <u>generally</u> <u>Public Health</u>

<u>Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.</u>, 992 F.2d 291, 295 n. 4 (11th Cir.

1993) ("We do not create intercircuit splits lightly").[7]  Accordingly, the district

court did not err by concluding that Moore's habeas petition was timely.


B.    <u>Procedural Bar</u>


The State argues that the district court erred by refusing to dismiss Moore's

claims as procedurally barred.  The State contends that, although the State failed to

raise the statute of limitations defense before the Rule 32 court, the Alabama Court

of Criminal Appeals's dismissal of Moore's claims as time barred qualified as "a

---

[7] We observe that the Third Circuit has stated that the grace period includes 23 April 1997; it, however, has done so without purporting to make the choice about whether a petition filed on 24 April 1997 would be timely. <u>See, e.g.</u>, <u>Burns v. Morton</u>, 134 F.3d 109, 111 (3d Cir. 1998) ("habeas petitions filed on or before April 23, 1997, may not be dismissed for failure to comply with § 2244(d)(1)'s time limit.").

14

firmly established and regularly followed" rule to preclude substantive review of Moore's claims.

We review de novo the district court's determination that Moore was not procedurally barred from raising his claims in federal court. Wright v. Hopper, 169 F.3d 695, 701 (11th Cir. 1999).

A state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon an "independent and adequate" state ground. See Coleman v. Thompson, 111 S. Ct. 2546 (1991). Only rules that are "firmly established and regularly followed" qualify as adequate state grounds for precluding substantive review of federal claims. Ford v. Georgia, 111 S.Ct. 850, 857 (1991); Cochran v. Herring, 43 F.3d 1404, 1408 (11th Cir. 1995).

This Court in Siebert v. Campbell, 334 F.3d 1018 (11th Cir. 2003), concluded that, before the Alabama Supreme Court's decision in Williams v. State, 783 So.2d 135, 137 (Ala.Crim.App. 2000), the jurisdictional character of Alabama Rule of Criminal Procedure 32(c) was not firmly established and not regularly followed. Because the jurisdictional rule in Williams was rendered well after the Alabama courts ruled on Moore's Rule 32 petition in 1998 and 1999, the

district court properly concluded that Moore's claims were not procedurally barred.

C.    Competency to Stand Trial

Moore argues that the unrebutted evidence presented at the Rule 32 hearing demonstrated that he was incompetent to stand trial. Moore's incompetency claim contains several procedural and substantive components: First, Moore contends that the state violated his right to due process under the Fourteenth Amendment by trying him while incompetent. Second, Moore argues that, because bona fide doubt existed about Moore's competence to stand trial, the trial court should have held a competency hearing. Third, Moore contends that counsel rendered ineffective assistance by failing to move for a competency hearing during the trial.

We review the district court's grant or denial of habeas corpus relief de novo. Byrd v. Hasty, 142 F.3d 1395, 1396 (11th Cir. 1998). Under § 2254(d) a federal habeas court can grant relief for a claim adjudicated on the merits in state court only where the adjudication in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

16

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams v. Taylor, 120 S.Ct. 1495, 1519 (2000).[8]

### 1. Substantive Due Process Claim

Moore asserts that, once the district court concluded that Moore was incompetent on 31 August and 1 September 1987, it should have granted his habeas petition. Moore also contends that no evidence shows that he induced his own incompetency and that the right to be competent at trial cannot be waived.

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting defendants who are mentally incompetent. See Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995). The standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and

---

[8] We realize that the Alabama Court of Criminal Appeals affirmed the judgment of the Rule 32 court on different grounds. But the Alabama Court of Criminal Appeals did not decide that the Rule 32 court's adjudication on the merits was an inaccurate view of the merits. We therefore give the decision of the Rule 32 court deference under 28 U.S.C. § 2254(d). Neither party has directly argued the question of whether the Alabama Court of Criminal Appeals's decision on different grounds deprives the Rule 32 court's decision of deference by federal courts per section 2254(d).

17

whether he has a rational as well as factual understanding of the proceedings against him." See Dusky v. United States, 80 S.Ct. 788, 789 (1960).

We will assume -- without deciding -- that the state court's finding that Moore was competent, in fact, on 31 August and 1 September 1987 was an unreasonable determination of the facts in the light of the evidence presented at the State Rule 32 proceeding. For background, see 28 U.S.C. § 2254(d). Even assuming, however, that Moore was incompetent, in fact, for these two days of his trial, he is entitled to no habeas relief. The state court's additional determination that Moore, by his hunger strike (which contributed to his incompetency), forfeited his right to be competent at trial is neither contrary to nor an unreasonable application of the pertinent federal law in the light of the state court's reasonable determination of facts supported by the evidence presented at the state proceedings.

We first consider whether the state court's determination that a defendant can forfeit his right to be competent at trial was contrary to or an unreasonable application of clearly established Supreme Court law.

The requirement that a defendant be mentally competent to stand trial "has deep roots in our common-law heritage." Medina v. California, 112 S.Ct. 2572, 2577 (1992). This prohibition seeks to protect defendants who, due to their

18

condition, are unable to participate in their defense.  See <u>Cooper v. Oklahoma</u>, 116 S.Ct. 1373, 1381-82 (1996).  Thus, the requirement that a defendant have a rational as well as factual understanding of the proceedings against him and have a sufficient present ability to consult with his lawyer essentially assures that the defendant is mentally, as well as physically, present in the courtroom.

The Supreme Court has determined that, in some cases, a defendant may forfeit his constitutional right to be physically present at his own trial.  See <u>Illinois v. Allen</u>, 90 S. Ct. 1057, 1062 (1970) (trial court's removal of defendant from courtroom after defendant continued to disrupt proceedings not unconstitutional); <u>see also</u> <u>Taylor v. United States</u>, 94 S. Ct. 194, 196 (1973) (affirming conviction where judge conducted trial without defendant, pursuant to Fed.R.Crim.P. 43, where defendant failed to appear for the remainder of his trial after attending its beginning); <u>accord</u> <u>United States v. Edwards</u>, 303 F.3d 606, 627 (5th Cir. 2002), <u>cert. denied</u>, 123 S.Ct. 1272 (2003) (concluding that defendant was voluntarily absent under Fed.R.Crim.P. 43 where defendant delayed necessary medical treatment until trial commenced); <u>United States v. Crites</u>, 176 F.3d 1096, 1097-98 (8th Cir. 1999) (concluding that trial court did not clearly err in finding that defendant was voluntarily absent after suicide attempt left him unconscious and hospitalized); <u>State v. Rice</u>, 757 P.2d 889, 909-10 (Wash. 1988), <u>receded from on</u>

19

other grounds, State v. Gentry, 888 P.2d 1105 (Wash. 1995) (concluding that capital defendant who attempted suicide was voluntarily absent and waived due process right to be present at the return of the verdict). In a similar way, a state court can determine -- not unreasonably, we believe -- that the idea of forfeiture applies to defendants who, in effect, intentionally absent themselves from their trial by self-inducing their incompetence.

We know that the Supreme Court in Pate v. Robinson stated that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." 86 S.Ct. 836, 841 (1966). But, in Pate, no allegation was made that the defendant induced his own incompetency. Instead, the state argued in Pate that the defendant had failed to request properly a competency hearing. Here, the State argues that Moore's intentional, affirmative act -- his refusal to eat and to drink -- induced his alleged incompetence at trial. Furthermore, as discussed below, it was reasonable for the state court to find that Moore did so with the "calculated" intent of disrupting his trial. Cf. Drope v. Missouri, 95 S.Ct. 896, 909 (1975) (concluding that an insufficient inquiry had been made into petitioner's competence to stand trial in the light of petitioner's suicide attempt by a self-

inflicted gunshot wound and other conduct. But noting that a suicide attempt need not always signal incompetency to stand trial).

Moore asserts that, because he was being tried for a capital crime, his presence at trial is non-waivable. The argument that a capital defendant cannot waive his right to be present at trial essentially comes from three Supreme Court cases: Diaz v. United States, 32 S.Ct. 250 (1912); Lewis v. United States, 13 S.Ct. 136 (1892); Hopt v. Utah, 4 S.Ct. 202 (1884).

In Hopt and Lewis, cases which involved capital defendants, the Supreme Court suggested that a nonwaivable right of presence exists generally in a criminal case. Over time, however, the rule announced in these cases has been eroded to an extent that it is no longer clear that they are good law at all.

In Diaz, a non-capital case, the Supreme Court rejected the "broad dicta" of Hopt and Lewis; and the Court concluded that, if an offense was not a capital offense, a defendant's voluntary absence could operate as a waiver of his right to be present. 32 S.Ct. at 255. Later, in Snyder v. Massachusetts, a capital case, the Supreme Court again noted that the statements in Hopt and Lewis about the presence of a defendant were "dictum, and no more" and wrote that the privilege of presence "may be lost by consent or at times even by misconduct." 54 S.Ct. 330, 332 & 336 n.2 (1934), overruled on other grounds, Malloy v. Hogan, 84 S.Ct.

21

1489 (1964). In Allen, the Supreme Court stated that "[t]he broad dicta in Hopt . . . and Lewis . . . that a trial can never continue in the defendant's absence have been expressly rejected." Allen, 90 S.Ct. at 1060. Finally, in Drope, the Supreme Court specifically reserved the question of whether a capital defendant could waive his right to be present stating that "[o]ur resolution of the first issue . . . makes it unnecessary to decide whether, as [the defendant] contends, it was constitutionally impermissible to conduct the remainder of his trial on a capital offense in his enforced absence . . . ." 95 S.Ct. at 909 (citing Diaz, 32 S.Ct. at 251). Given the history, the language in Drope can justify this conclusion on the part of an objectively reasonable judge: the issue of whether a defendant must be present at all times in a capital trial has not yet been settled by the Supreme Court.

Based upon the lack of clarity of the Supreme Court precedents, we cannot conclude that the state court's determination that a capital defendant in Alabama can forfeit his right to be competent -- that is mentally present -- at trial was contrary to or was an unreasonable application of clearly established Supreme Court precedent.[9] See L'Abbe v. Dipaolo, 311 F.3d 93, 97-99 (1st Cir. 2002), cert.

---

[9] This Court, citing Diaz and Hopt, has written that the Supreme Court had said that capital defendants could not waive their right to be present at trial. See Proffitt v. Wainwright, 685 F.2d 1227, 1257-58 (11th Cir. 1982), modified, 706 F.2d 311 (1983); see also Hall v. Wainwright, 733 F.2d 766, 775-76 (11th Cir. 1984) (reading Proffitt as prohibiting a capital defendant from waiving his right to be present, but remanding for further development of record regarding waiver of right to be present).

22

<u>denied</u>, 123 S.Ct. 1593 (2003) (concluding that state court's conclusion that capital defendant could waive right to be present at trial not contrary to or an unreasonable application of Supreme Court precedent).

Neither was the state court's determination that Moore's incompetence was self-induced in a "concerted" and "calculated" manner an unreasonable determination of the facts. The Rule 32 court also describes Moore's acts during the time of his trial as "a calculated trial strategy." We understand from the state court's words, in the context of the total Rule 32 order, that Moore intended to make himself mentally or physically incompetent to stand trial. The Rule 32 court's words like "calculated" tell us that the Rule 32 court found Moore had the power to think, to reason, and to plan about how to get a mistrial: Moore competently and purposefully embarked on a process that would result in his becoming incompetent or otherwise absent from the trial.

---

We, however, note that <u>Proffitt</u> and <u>Hall</u> were decided before Congress enacted the AEDPA which provides for a far more deferential federal review of state court decisions. See <u>Putman v. Head</u>, 268 F.3d 1223, 1247 n.23 (11th Cir. 2001), <u>cert. denied</u>, 123 S.Ct. 278 (2002). We now can only interfere with the state court's decision if it is contrary to or applies clearly established federal law as determined by the Supreme Court of the United States in an "objectively unreasonable" manner. "Clearly established federal law is <u>not</u> the case law of the lower federal courts, including this Court." <u>Id.</u> at 1241. Rather, "clearly established Federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Hall v. Head</u>, 310 F.3d 683, 691 (11th Cir. 2002), <u>petition for cert. filed</u>, (U.S. June 6, 2003) (No. 03-574) (quoting <u>Williams</u>, 120 S.Ct. at 1523) (alteration in original). For more background about AEDPA's limits on federal court authority, see <u>Hawkins v. Alabama</u>, 318 F.3d 1302 (11th Cir. 2003).

23

Dr. Brodsky testified at Moore's Rule 32 hearing that it was <u>not</u> Moore's depression alone that made Moore incompetent: instead it -- according to Dr. Brodsky -- was Moore's failure to eat and to drink that rendered Moore incompetent on the two days in question. Although Dr. Brodsky testified that he, from the vantage of hindsight, believed that Moore's refusal to eat was due to his profound depression and that Moore was not malingering, Dr. Nagi, (who evaluated Moore during the trial's course) found Moore competent before Moore refused food and drink and testified that Moore expressed concern about the venue in which his case was being tried. Moore indicated to Dr. Nagi that Moore desired a mistrial: "I'm very frustrated. What do you want me to do--shoot the jury to have it mistried?" Furthermore, the evidence reflects that Moore only stopped eating upon being removed from the hospital (following his suicide attempt) and taken to the county jail to resume his trial.

Based upon the evidence presented, the state court's determination -- finding and concluding that Moore "undertook a calculated and concerted effort to disrupt his capital murder trial" and that Moore, thus, forfeited his right to be competent at the trial -- was not an unreasonable determination of the facts or an unreasonable application of clearly established Supreme Court law. See generally 28 U.S.C. § 2254(d).

24

2.     Procedural Due Process and Ineffective Assistance of Counsel

A defendant who was at the pertinent time competent to stand trial is not entitled to a new trial on the procedural ground that the trial judge in his initial trial failed to hold a competency hearing. James v. Singletary, 957 F.2d 1562, 1571-72 (11th Cir. 1992) (failure to hold competency hearing harmless error if defendant was competent at the time of trial). In a similar way, defense lawyers cannot have improperly prejudiced a defendant – depriving him of his constitutional right to counsel -- by not asserting the need for (or appealing about) a competency hearing when the defendant was, in fact, competent for the pertinent period.

The Alabama Rule 32 court decided that Moore was, in legal effect, competent because his incompetency -- if any in fact -- was caused by his concerted and calculated strategy of avoiding food and drink to stop the trial: Moore, by his own conduct, forfeited his right to be competent at trial. This decision was not an unreasonable one in the light of Supreme Court precedent, so, Moore's other claims must also fail. If he was, in effect, competent, the failure of

lawyers to ask for or of the trial court to hold a competency hearing cannot be prejudicial enough to justify habeas relief.[10]

## CONCLUSION

For the foregoing reasons, the district court's order denying Moore's petition for habeas corpus is AFFIRMED.

---

[10] Although the evidence established that Moore refused to eat or to drink, no evidence shows that the trial court was aware of this fact until Moore was taken to the hospital on the evening of 1 September, that is after the trial days which are the focus of Moore's incompetency claim. Neither does the evidence reflect that Moore's appearance and acts at trial raised a "bona fide doubt" about his competency. Although two reporters, a sheriff's deputy, and Moore's mother testified that Moore exhibited weakness and lethargy during the trial, this situation -- even if observed by the trial court -- would not necessarily lead a reasonable trial judge to question Moore's competency. After Moore's suicide attempt, the trial judge ordered a competency evaluation and was assured by Dr. Nagi that Moore was competent to stand trial. A trial judge reasonably could have concluded that Moore's weakness was the after-effects of his suicide attempt. We agree with the district court that Moore failed to establish that the evidence before the state trial court established a "bona fide doubt" regarding Moore's competency to stand trial.

26