UNITED STATES of America

v.

Randy AVERY.

CRIM. ACTION NO. 3:96cr27–T.

United States District Court,
M.D. Alabama,
Eastern Division.

Aug. 3, 2004.

Federal Defender, Federal Defenders, Middle District of Alabama, Barry Elvin Teague, Christine A. Freeman, Federal Defenders, Middle District of Alabama, Montgomery, AL, for Defendant.

Louis V. Franklin, Sr., U.S. Attorney's Office, Montgomery, AL, for Plaintiff.

## ORDER

MYRON H. THOMPSON, District Judge.

The issue before the court in this criminal case is whether defendant Randy Avery is sufficiently mentally competent to allow proceedings to go forward on whether the conditions of his supervised release should be modified to include a mandatory psychological evaluation and mental-health treatment. For reasons that follow, the court holds that Avery is not sufficiently competent.

However, as a preface to how this holding was reached, the court notes that two circumstances lift this case out of the ordinary: First, federal law fails to give direct guidance on what courts are to do in a supervised-release proceeding in addressing a defendant's alleged mental incompetency; and, second, the evidence before the court strongly suggests that Avery's current mental illness is the result of an unconscionable and calculated disregard by Bureau of Prison officials for his well being while he was incarcerated in the federal prison system.

## I.

In 1996, Avery was convicted of distributing cocaine and was sentenced to 87 months in prison and four years of supervised release. In June 2003, approximately one year ago, Avery was released from prison. Then, on February 13, 2004, just over a half year after Avery's release, the Probation Department filed a motion to modify Avery's conditions of supervised release to include a mandatory psychological evaluation and mental health treatment; the department alleged that Avery had violated his supervised-release conditions in a number of ways, including repeatedly refusing to report to his probation officer. The Probation Department filed the modification motion, as opposed to a motion to revoke, out of serious concern that Avery's compliance failures were due to mental illness.

At a hearing on March 22, 2004, the court decided that there was reasonable cause to believe that Avery was not sufficiently mentally competent to allow the modification proceeding to go forward at that time. The court ordered that Avery be evaluated for mental competency. Dr. Catherine L. Boyer, a clinical and forensic psychologist, evaluated Avery for mental competency.

On July 23, 2004, the court held another hearing. The court was confronted with three possible issues: (1) whether Avery is mentally competent; (2) if he is not competent, what the court should do next in light of his incompetency; and (3) if he is competent, whether his supervised-release conditions should be modified as requested by the Probation Department.

## II.

### A.

■ To be sure, under the due process clause of the Fourteenth Amendment to the United States Constitution as well as by rule, a defendant has a right to a hearing before the conditions of his super-

vised release can be modified. Fed. R.Crim.P. 32.1 (except in circumstances not applicable here, "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel."); *cf. Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (due process requires a hearing before probation can be revoked); *Morrissey v. Brewer,* 408 U.S. 471, 487, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972) (due process requires a hearing before parole is revoked). Due process includes the prohibition that a modification hearing cannot be held in the absence of the defendant's mental competency. *Cf. Medina v. Singletary,* 59 F.3d 1095 (11th Cir.1995) (due process is violated if defendant tried when mentally incompetent).

Therefore, as stated, the court must first determine if Avery is mentally competent. However, as defense counsel points out, the statute controlling mental-competency proceedings in federal criminal cases, the Insanity Defense Reform Act of 1984, 18 U.S.C.A. §§ 4241–4246, does not make it clear how a court is to proceed when a defendant's competency is questioned in the context of a supervised-release modification hearing.

The Insanity Defense Reform Act of 1984 establishes the system of competency proceedings in federal criminal cases. The statute completely revamped the federal procedure for competency hearings and hospitalization of those found incompetent to stand trial. As one court found, "the legislative history indicates that Congress intended this chapter to provide for the treatment of criminal offenders during all phases of the criminal justice process. To this end, 18 U.S.C. §§ 4241–4246 tracks the progress of defendants through the adjudicative and correctional systems." *United States v. McCarty,* 747 F.Supp. 311 (E.D.N.C.1990).

While the Insanity Defense Reform Act of 1984 appears to have been intended to be comprehensive, and while the statute has explicit rules for competency proceedings from the pretrial stage until release from prison, the statute notably does not address competency proceedings for defendants at the post-incarceration, supervised-release stage. Therefore, it is unclear which, if any, of the provisions of the act should be applied to individuals who are, like Avery, on supervised release.

In the context of supervised-release revocation proceedings, several courts have found that it was appropriate to follow the procedures set forth in 18 U.S.C.A. § 4241, which governs determinations of defendants' competency to stand trial.[1] *United States v. Vandyke,* 64 Fed.Appx. 877, 878

---

1. 18 U.S.C.A. § 4241 reads in relevant part: "(a) Motion to determine competency of defendant.—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the

extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

.    .    .    .    .

"(d) Determination and disposition.—If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the

(4th Cir.2003) (applying § 4241(d) to revocation hearings); *United States v. Kanode*, 993 F.2d 1540, 1993 WL 168936 (4th Cir. 1993) (noting the use of § 4241 to address a motion for an evaluation to determine competency to proceed with a supervised-release revocation hearing); *United States v. Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986) (affirming district court's finding that defendant in probation-revocation proceeding lacked competency, and affirming defendant's subsequent forced hospitalization pursuant to § 4241(d)); *United States v. McCarty*, 747 F.Supp. 311, 312–13 (E.D.N.C.1990) (finding that court did not have jurisdiction to hospitalize defendant in revocation hearing under § 4245, which covers hospitalization of persons serving a sentence of imprisonment, but finding that court did have jurisdiction under § 4241).

This court finds the reasoning in *McCarty* persuasive. In *McCarty*, the court found that because the Insanity Defense Reform Act of 1984 was intended to be comprehensive and because no part of the act specifically covers defendants who may be incompetent for a parole revocation hearing, the court should apply § 4241, the statute covering competency hearings for defendants before trial, that is, for pretrial detainees. The court explained that the "class of persons covered by § 4241 is most analogous to a parolee found incompetent to have his or her parole revoked." 747 F.Supp. at 314. Like pretrial detainees, the court added, persons who are incompetent to have their parole revoked are also detained on a provisional basis, and, like pretrial detainees, they have not had the merits of their case (or objections) adjudicated. *Id.* While *McCarty* involved a parole-revocation hearing, supervised-release is sufficiently analogous to parole

that the court finds this reasoning equally persuasive in the supervised-release revocation context.

The reasoning used to apply § 4241's pretrial-detainee competency procedures to parole or supervised-release revocations is also applicable to supervised-release modification proceedings; thus § 4241 applies to supervised-release modification proceedings as well. Indeed, there is little practical difference between a modification and a revocation in Avery's case. Avery has made clear that, although cooperation with his probation officer is required by the conditions of his supervised release, he will not cooperate with his probation officer, and, more to the point, he has made clear that he will not seek mental-health treatment even if ordered to do so by the court. In fact, because Avery has been refusing to report to his probation officer, his probation officer could have, just as easily, moved for a revocation. The only reason his probation officer did not move for a revocation is because he believes Avery is mentally ill. He testified that he thought that mental-health counseling and treatment could get Avery "back on track." It would be formalistic to differentiate between a revocation hearing and a modification hearing in this context; the conduct at issue would support either revocation or modification.

For the reasons stated above, this court will apply the pretrial-detainee competency procedures outlined in 18 U.S.C.A. § 4241 to determine Avery's competency. A pretrial detainee is not competent to stand trial if he "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against

defendant to the custody of the Attorney          General...."

him or to assist properly in his defense." 18 U.S.C.A. §§ 4241(d). *See also Moore v. Campbell*, 344 F.3d 1313, 1321 (11th Cir. 2003) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960)) (standard for competency to stand trial is " 'whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' "); *United States v. Duhon*, 104 F.Supp.2d 663, 670 (W.D.La.2000): ("[T]o be competent, a defendant must be able to (1) consult with the lawyer with a reasonable degree of rational understanding; (2) otherwise assist in the defense, (3) have a rational understanding of the criminal proceedings and (4) have a factual understanding of the proceedings.").

■ This statutory standard also applies to supervised-release modification proceedings. Thus, a defendant is not mentally competent as to a supervised-release modification proceedings if the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

■ All the evidence before the court points unambiguously to one conclusion: Avery is not competent. First, in a report detailing what she learned from her evaluation of Avery, Dr. Boyer explains that "Avery's paranoid delusions are pervasive. They affect all aspects of his life, but clearly focus on his legal history and current legal situation. He believes his probation officer is part of a broader conspiracy as are the proceedings against him. He can-

not trust his attorney." Dr. Boyer concludes that "Avery suffers from a major mental illness that substantially interferes with his ability to rationally understand the proceedings, to assist counsel, and to participate in the proceedings in a rational and appropriate manner." In clinical language, Dr Boyer states that "Avery's current presentation is consistent with a psychotic disorder, most likely a Delusional Disorder, Persecutory type, or Schizophrenia, Paranoid type, for Axis I of the DSM diagnostic system." Dr. Boyer also made clear that Avery's mental illness is probably treatable, though hospitalization would be required.

Second, in confirmation of Dr. Boyer's findings and conclusion that Avery is mentally ill, Avery's girlfriend of 17 years testified that Avery claims to hear voices and see images that she cannot see, and that he gets very angry with her when she says she does not hear the same voices.

Third, at the July 23 hearing, Avery himself addressed the court and confirmed many of the facts Dr. Boyer related in her report in support of her diagnosis. Avery described how he believes that the federal government is orchestrating a complicated, extremely involved conspiracy against him; how the federal government is performing some sort of medical tests on him and trying to kill him; and that federal government is involved in "hypnosis" or "voodoo" designed to hurt him and his family, and that this was the reason he was incarcerated in 1996. Avery states that he stopped filing his reports with probation so he could come before this court and address the perceived injustices he has suffered.

But most striking is the fact that, in the midst of all these delusional comments from Avery, he may actually be right about one matter: the source of his prob-

lem, regardless to how his problem is diagnosed or perceived. His prison records reflect that he may very well have suffered gross injustices at the hands of prison officials while he was incarcerated. According to testimony provided by Dr. Guy Renfro, a clinical and forensic psychologist who has previously worked in the federal prison system, Avery's prison records show that he spent almost six continuous years in solitary confinement, at times as a punishment for his misbehavior and at times even by choice, and that his misbehavior and his choice were not necessarily separable because he more than likely chose, as a result of his mental illness, to engage in misbehavior so as to be kept in segregation.

Despite evidence strongly suggesting that Avery was increasingly exhibiting signs of severe mental illness, he did not receive mental-health treatment during these six years. Apparently, as Dr. Renfro all but suggested, the federal prison system found it more convenient to ignore Avery's increasingly severe mental illness and instead allow him to waste away in solitary confinement for years and years, rather than invest the extended time and energy that would have been required to address his mental-health problem. Not surprisingly, after six years of being deprived of human contact, Avery is currently unable to focus on anything except the injustices he suffered.

The record is clear that, while Avery may have a basic factual understanding of the current competency and modification proceedings (that is, he understands that he was in court for a competency hearing, and he understands the role of a lawyer, etc.), he does not have a rational perception of the proceedings. Avery is so obsessed with the conspiracy he believes is being plotted against him that he is unable to express to the court his objections to the modification motion.

Indeed, in an exchange between the court and Avery, the court was unable to engage him on the issues to be decided by the court: whether he is mentally competent and, if so, whether his conditions of supervised release should be modified. Avery simply stated that he is not sick. When asked about whether there he would voluntarily seek mental-health treatment should the court require such, Avery was unable to address the court's question because he was unable to disengage long enough from telling the court about his belief that the federal government is trying to kill him. The court's observation confirms the psychological evaluation that Avery is completely fixated on the perceived conspiracy and that his paranoid condition interferes with his ability to communicate rationally. Furthermore, Avery's belief (also confirmed by Dr. Boyer) that the conspiracy may include his defense counsel and probation officer only exacerbates the problem of his inability to consult rationally with his counsel.

Based on these findings, the court finds that Avery suffers from a mental disease or defect that renders him incompetent in that he is unable to rationally understand the proceedings, is unable to consult with his attorney with a reasonable degree of rational understanding, and is otherwise unable to assist in his defense. Therefore, Avery is not competent to proceed with the hearing to modify the conditions of his supervised release.

**B.**

Having determined that Avery is not competent, the court must now determine

how to proceed. As explained above, the court will use the procedures set forth in 18 U.S.C.A. § 4241. Section 4241(d) provides that if, after a hearing, a court finds that the defendant is not competent, the court "shall commit the defendant to the custody of the Attorney General." The Attorney General is authorized to:

"hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246."

18 U.S.C.A. § 4241(d).[2]

## C.

Avery's counsel has suggested that it might be appropriate to appoint a guardian ad litem in this case. The court declines to appoint a guardian ad litem at this point. The court certainly would not appoint a guardian to stand in for Avery at his modification hearing; this hearing may proceed only if Avery himself is or becomes competent to participate in it. As noted above, in this case a modification hearing is equivalent to a revocation hearing, and defendants threatened with the revocation of their supervised release are entitled to due process, including a hearing at which they can present evidence and defend themselves. This guarantee would be meaningless if a court could proceed with a hearing simply by appointing a guardian when the defendant is incompetent.

However, although the court declines to appoint a guardian ad litem at this point, the court does not rule out the possibility that such an appointment could be appropriate at a later point in this case for other reasons.

**2.** While the court has found that Avery is not competent to proceed with a modification hearing, it has not considered or decided whether Avery is competent to make his own medical decisions about treatment, such as by refusing medication. The standard for competency to make one's own medical decisions is not the same as the standard for competency to participate in legal proceedings. Under *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), the government may administer psychotropic drugs to a mentally ill defendant in order to render him competent for trial only after a court makes an individualized determination about the importance of the governmental interests at stake, whether the involuntary medication will significantly further the government's interests, whether the involuntary medication is necessary to further those interests, and whether the administration of the drugs is medically appropriate. 539 U.S. at 179–181, 123 S.Ct. at 2184–85. Because the parties did not raise this issue, the court has not addressed whether the government's interest in rendering Avery competent for the hearing is strong enough to justify his being forcibly medicated. If the government seeks to medicate Avery and he refuses that medication, further court proceedings may be required.

## III.

Finally, as the evidence before the court reflects, Avery went into federal prison system very much a mentally well man and came out very much a mentally ill one, and the fault for this change appears to lie in substantial measure with the Bureau of Prison. However, the court recognizes that, in reaching this conclusion, it has relied mainly on Avery's prison records as interpreted by a clinical and forensic psychologist; the court has not heard from Bureau of Prison officials themselves. The court, therefore, strongly suggests to the Bureau of Prisons and the United States Attorney General that some appropriate official should engage in a fullscale investigation of how Avery was treated in prison (in particular, how his mental problems were treated or not treated), so that if, after a full and fair investigation, the evidence should show that Avery was mistreated or neglected, those responsible can be held accountable, or if the evidence should show that Avery's current mental state is not the result of mistreatment or neglect by prison officials, then the record will be have been set straight.

## IV.

Accordingly, it is ORDERED as follows:

(1) Defendant Randy Avery is declared to be mentally incompetent to proceed with the supervised-release modification proceedings in this case, and defendant Avery is committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C.A. § 4241.

(2) The Attorney General shall, pursuant to 18 U.S.C.A. § 4241(d), hospitalize defendant Avery for treatment in an appropriate facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the hearing to proceed.

(3) On or before the end of this four-month period, the Attorney General or his designee shall file a report on the mental condition of defendant Avery.

(4) Defendant Avery shall stand committed for his hospitalization on or before 12 o'clock noon on August 6, 2004. Defendant Avery shall surrender himself to the United States Marshal for the Middle District of Alabama at his office in the Frank M. Johnson, Jr., Federal Building and United States Courthouse in the City of Montgomery, Alabama, on this date for the purpose of his hospitalization.

(5) It is strongly suggested that the Bureau of Prisons and the Attorney General of the United States conduct an investigation into whether Bureau of Prisons officials inappropriately failed to address defendant Avery's mental illness while he was incarcerated.