[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11742

Non-Argument Calendar

_____

SHANNON COPELAND,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:18-cv-00173-RH-MJF

_____

Before LAGOA, BRASHER, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Shannon Copeland appeals from the district court's denial of her petition for a writ of habeas corpus under 28 U.S.C. § 2254. Copeland argues on appeal that the district court erred when it held that the Florida appellate court's denial of her competency-based due process claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Having carefully reviewed the record and the arguments of the parties, we discern no error and thus affirm.

## BACKGROUND

In May 2007, Petitioner Shannon Copeland was charged in Florida state court with resisting an officer with violence and battery on a law enforcement officer. The charges arose from an incident that occurred on May 17, 2007, after a Liberty County sheriff's deputy responded to a report by Copeland's father concerning a verbal altercation at his home. Copeland's father told the deputy who arrived on the scene that Copeland was acting out and would not take her medication for mental illness. When Copeland saw the deputy, she locked herself in a bathroom and called someone to come and get her. Copeland then climbed out of the bathroom window and ran.

After confirming that there were two outstanding Martin County warrants for Copeland's arrest, the deputy pursued and was able to apprehend and arrest Copeland despite a significant physical struggle.  The struggle continued while Copeland was being processed at the Liberty County jail.  Copeland eventually was pepper-sprayed and placed in a holding cell at the jail, at which time she allegedly urinated on the floor, scooped up the urine, and threw it at the deputy who had arrested her.  Another deputy subsequently was able to obtain Copeland's compliance by tasing her.

The State declined to pursue the battery charge against Copeland but prosecuted her for resisting an officer with violence.  Copeland's defense counsel and the prosecutor in the case jointly moved to refer Copeland for a competency evaluation.  Copeland was evaluated in late May 2007 by Dr. Gregory Prichard, who determined that she was competent to proceed but not culpable due to her mental health condition.  Dr. Prichard noted in his report that Copeland had been prescribed various psychotropic medications for bipolar disorder and that she had committed numerous criminal offenses beginning in 2002, all of which related to her relationship with a male individual and which culminated in a Martin County domestic violence injunction and aggravated stalking charge in 2006 or 2007.  Dr. Prichard determined that Copeland had a rational appreciation of the resisting charge lodged against her in Liberty County and that she had the capacity to consult with counsel and testify relevantly as to the charge, but that her

delusional disorder prevented her from understanding the nature and consequences of her actions when she incurred the charge.

On June 7, 2007, a few weeks after Dr. Prichard's evaluation, the prosecutor referred Copeland for a second competency evaluation. This time, Dr. Celeste Shuler evaluated Copeland and determined that she was incompetent to proceed. Dr. Shuler's report indicated that Copeland had been committed for residential psychiatric treatment on two prior occasions, and that she was currently being treated for bipolar disorder but that she had admitted she was not taking her prescribed medications. Dr. Shuler noted that Copeland's behavioral difficulties had become progressively worse since her arrest, and that she had demonstrated delusional thinking throughout her evaluation. Dr. Shuler ultimately concluded that Copeland suffered from delusional disorder with additional symptoms of bipolar and borderline personality disorder, which diminished her capacity to effectively participate in her own defense.

Based on Dr. Shuler's evaluation, the state trial court committed Copeland to the Florida Department of Children and Families to be placed in a residential mental health treatment facility for the purpose of restoring her competency. Copeland was committed on June 8, 2007 and admitted to the Florida State Hospital for residential psychiatric treatment on June 13, 2007.

On August 13, 2007, after approximately two months of residential treatment, Florida State Hospital submitted a report to the state trial court indicating that Copeland no longer met the criteria for commitment and that she had been restored to competency.

The report included an evaluation by Dr. Leslie Dellenbarger, who noted that Copeland had been prescribed different psychotropic medications during her treatment at Florida State Hospital, that she had become compliant with her medications after her behavior and mental health symptoms stabilized, and that she had attended ten hours of weekly competency training while she was committed. Dr. Dellenbarger concluded that Copeland "demonstrated both a factual and rational understanding of all areas of competency assessed" and that she was "competent to proceed."

Upon receipt of the report from Florida State Hospital, the state trial court notified the parties that it would conduct a competency hearing for Copeland on September 5, 2007. At the hearing, defense counsel advised the court that Copeland had been deemed incompetent a few months prior but that the hospital where Copeland had received residential treatment had submitted a report finding her competent to proceed, and he stipulated to her competency. The prosecutor stated that he had reviewed the report finding Copeland competent, and he likewise stipulated to Copeland's competency. Defense counsel then informed the court that Copeland wanted to withdraw her previously entered plea of not guilty and enter a plea of no contest to one count of resisting with violence.

After the competency discussion, the court proceeded to colloquy Copeland. During the colloquy, Copeland responded affirmatively—and appropriately—to the state trial court's questions as to whether: (1) she had consulted and was satisfied with her

attorney, (2) she understood the charge against her and had voluntarily signed and understood her plea, (3) there was a factual basis to support the charge against her, and (4) she understood the maximum penalty that could be imposed for the charge and the rights she was giving up by entering a plea.  The court subsequently accepted Copeland's plea and found that it was entered "freely, intelligently, and voluntarily."

After some additional discussion of Copeland's criminal offenses since 2002, and an explanation by defense counsel that Copeland would be returning to Martin County to be sentenced for the stalking offense she had committed there, Copeland directly addressed the court.  At this time, Copeland explained to the court—rationally and succinctly—that it was a misunderstanding that she had not been taking her medication, that she was seeing a doctor on a regular basis, and that she had incurred the resisting charge in part because she did not know there were outstanding warrants against her and she believed when she saw the deputy at her father's house on May 17, 2007 that she was going to be involuntarily committed.  Copeland explained further that she had not thrown urine from her jail cell, but rather scooped water off the floor of the cell to put in her eyes after being pepper sprayed.

Following the colloquy and Copeland's statements during the hearing, the state trial court adjudicated Copeland guilty of the offense of resisting an officer with violence.  The court sentenced Copeland to 113 days of time-served, plus three years of probation with the special conditions that she fully comply with psychiatric

treatment recommendations, including taking her medication, that she avoid the individual she had been charged with stalking, and that she not go to Martin County except to answer her outstanding charge in that county.

Copeland subsequently was sentenced to serve over a year in the Martin County jail on her stalking charge there. Upon Copeland's release from the Martin County jail in January 2009, she was instructed to report to the probation office to begin serving her three-year probation for the Liberty County resisting offense underlying this case. Copeland violated her probation when she failed to report to the probation office as directed. It was later determined that Copeland had also violated her probation by changing her residence without informing her probation officer. Copeland was arrested for the probation violations in July 2009 and a violation of probation ("VOP") hearing was set for September 2009. Copeland did not appear for the 2009 hearing because she had by that time been reincarcerated and sentenced to 144 months on a high-speed or wanton fleeing charge in Martin County.

In July 2010, the state trial court was made aware that Copeland was serving a sentence in Martin County, and it ordered the Liberty County Sheriff's Office to issue a detainer against Copeland to secure her presence for disposition of the VOP charge once she was released from prison. In September 2016, Copeland's attorney arranged for her to be transported to Liberty County for a VOP hearing. At the VOP hearing, Copeland entered a counseled, open admission to the VOP charges, and her probation was

revoked.    After a colloquy, the state trial court determined Copeland's admission was intelligently and voluntarily made, adjudicated Copeland guilty of violating her probation, and sentenced Copeland to 24 months on the Liberty County resisting offense, to be served consecutively to her Martin County sentence.[1]

Copeland appealed her VOP admission and sentence to the Florida appellate court.  In support of her appeal, Copeland argued, among other things, that the state trial court had violated her due process rights by failing to make a judicial determination of her competence prior to accepting her plea on the resisting charge in 2007.  Specifically, Copeland argued that after she was adjudicated incompetent in June 2007 (based on Dr. Shuler's report), she was presumed to remain incompetent until the state trial court held a competency hearing and expressly adjudicated her competent.  According to Copeland, no such hearing and adjudication occurred prior to her plea and sentencing on the resisting charge in September 2007.  The Florida appellate court rejected Copeland's appeal and affirmed the amended judgment against her in a *per curiam* decision issued without a written opinion or explanation.  *See Copeland v. State*, 237 So.3d 940 (Fla. 1st DCA 2017) (Table).

Copeland subsequently filed the instant *pro se* federal habeas petition pursuant to 28 U.S.C. § 2254.  In her petition, Copeland asserted the same competency-based due process claim

---

[1]  The sentence was later reduced by approximately four months after Copeland was awarded credit for time served in 2007.

20-11742                 Opinion of the Court                      9

that she raised in the Florida appellate court, among other claims.[2] In support of her competency claim, Copeland alleged that the state trial court had "sentenced [her] as incompetent without being adjudicated competent" and "after being found insane/incompetent."

Copeland's § 2254 petition was referred to a Magistrate Judge, who recommended in a Report and Recommendation ("R&R") that the petition be denied. As to Copeland's competency-based due process claim, the Magistrate Judge determined that relief under § 2254 was not warranted because the Florida appellate court's rejection of that claim was not contrary to, or an unreasonable application of, existing federal law. More specifically, the Magistrate Judge concluded that the Florida court's ruling on Copeland's claim could not be contrary to clearly established federal law because the Supreme Court "has not addressed a claim precisely like Copeland's, nor has it ruled on a materially indistinguishable set of facts." Nor was the ruling an unreasonable application of clearly established federal law, the Magistrate Judge reasoned, because the specific legal rule upon which Copeland's claim rested—a continuing presumption of incompetency until the trial court makes an express finding of competency, as required by

---

[2] Copeland also alleged in her habeas petition that she was sentenced based on unsubstantiated allegations and a false police report, and that her plea was involuntary. The district court denied these claims, and this Court declined to issue a COA. Accordingly, we only consider Copeland's competency-based due process claim in this appeal.

Florida's procedural rules—"has not been squarely established by the Supreme Court." In further support of its recommendation, the Magistrate Judge cited evidence indicating that Copeland was in fact competent at the time of her plea and sentencing, including: (1) Dr. Dellenbarger's report finding Copeland competent, (2) the stipulations of the prosecutor and defense counsel, (3) Copeland's behavior and demeanor during the change of plea hearing, and (4) Copeland's answers to the court's questions and her rational discussion of the facts underlying her case.

The district court adopted the Magistrate Judge's R&R rejecting Copeland's competency-based due process claim and declined to issue a Certificate of Appealability ("COA") as to the claim. Copeland filed a notice of appeal, which this Court construed as a motion for a COA. A single judge of this Court appointed counsel for Copeland and granted a COA solely as to the competency issue. The COA describes the issue for appeal as: "[w]hether the [state] trial court violated Copeland's due process right to a fair trial by failing to enter an order of competence, in compliance with [Florida Rule of Criminal Procedure] 3.212, before accepting her no-contest plea."

Copeland argues on appeal that the state trial court violated her federal due process rights when it accepted her plea and sentenced her without first holding a competency hearing and entering an order expressly finding her competent. According to Copeland, once she had been deemed incompetent, she was presumed to remain incompetent until she was afforded such a

hearing and express competency finding. As such, Copeland argues, the Florida appellate court's order rejecting her competency-based due process claim and affirming the state trial court's amended entry of judgment sentencing her to 24 months on a VOP arising from her 2007 plea and sentencing is contrary to or an unreasonable application of federal law, warranting federal habeas relief under § 2254.

## DISCUSSION

### I.    Standard of Review

We review the district court's legal conclusions, its holdings as to mixed questions of law and fact, and its ultimate denial of Copeland's § 2254 habeas petition *de novo*. *See Thomas v. Att'y Gen.*, 992 F.3d 1162, 1184 (11th Cir. 2021). We review any factual findings made by the district court for clear error. *Id.*

### II.    Federal Habeas Relief under § 2254

The Florida appellate court adjudicated Copeland's competency-based due process claim on the merits in her state appeal. Federal habeas relief is thus unavailable under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), unless the Florida court's ruling on the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the United States Supreme Court.[3] *See*

---

[3] Federal habeas relief can also be granted when a state court's ruling on a federal claim is "based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *See* 28 U.S.C.

12                    Opinion of the Court                    20-11742

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quoting 28 U.S.C. § 2254(d)) (quotation marks omitted).

The "contrary to" clause of § 2254(d)(1) applies when a state court "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or . . . decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Franks v. GDCP Warden*, 975 F.3d 1165, 1171 (11th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (alterations adopted and quotation marks omitted). The "unreasonable application" clause applies when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. *Id.* (alterations adopted and quotation marks omitted). A state court's decision constitutes an unreasonable application of clearly established federal law only where the ruling is "objectively unreasonable, not merely wrong[.]" *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (quotation marks omitted). Pursuant to AEDPA, even "clear error" by the state court does not warrant federal habeas relief under the unreasonable application prong of § 2254(d). *Id.*

For a petitioner to obtain habeas relief under either the "contrary to" or the "unreasonable application" provision of § 2254, there must be a "clear answer—that is, a holding by the Supreme

---

§ 2254(d)(2). But Copeland does not argue for the application of that provision nor otherwise challenge any factual determination made by the state trial court or the Florida appellate court.

Court—about an issue of federal law" that is contravened by the challenged state court ruling. *See Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286–88 (11th Cir. 2012). "A state court's decision cannot be contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . unless there is a Supreme Court decision on point." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1304 (11th Cir. 2019) (citation and quotation marks omitted). Further, "it is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (quotation marks omitted). Notably, a federal court cannot grant habeas relief under § 2254 based solely on precedent from the state court or on a perceived error of state law. *See Reese*, 675 F.3d at 1290 ("A precedent of a state court about an issue of state law can never establish an entitlement to a federal writ of habeas corpus. Moreover, even if a decision of a state court interprets federal law, [a federal habeas petitioner] cannot rely on that decision because under AEDPA, our review is limited to examining whether the highest state court's resolution of a petitioner's claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court." (quotation marks omitted)).

As evidenced by the above discussion, the standard for obtaining federal habeas relief on a claim that has been adjudicated on the merits in state court "is difficult to meet." *See Sexton*, 138

S. Ct. at 2558 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quotation marks omitted)).  That is "because it was meant to be."  *Id.* (quotation marks omitted).  Pursuant to AEDPA, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree" that the state court's ruling conflicts with the Supreme Court's precedents.  *See Richter*, 562 U.S. at 101 (quotation marks omitted).

### III.    Copeland's Competency Claim

In support of her argument that the Florida appellate court's denial of her competency-based due process claim was contrary to—or an unreasonable application of—clearly established federal law, Copeland primarily relies on the Supreme Court decisions *Pate v. Robinson*, 383 U.S. 375 (1966) and *Drope v. Missouri*, 420 U.S. 162 (1975).  In *Pate* and *Drope* the Supreme Court reiterated its long-standing rule that a defendant cannot, consistent with due process, be subjected to a criminal proceeding unless she is competent to stand trial.  *See Pate*, 383 U.S. at 378 ("[T]he conviction of an accused person while he is legally incompetent violates due process"); *Drope*, 420 U.S. at 171 ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subject to a trial.").

For purposes of this rule, a defendant is competent when she has a "present ability to consult with [a] lawyer with a reasonable degree of rational understanding" and a "rational as well as factual

understanding of the proceedings" against her. *See Drope*, 420 U.S. at 172 (quoting *Dusky v. United States*, 362 U.S. 402 (1960) (quotation marks omitted)). The state trial courts in both *Pate* and *Drope* conducted a criminal trial without inquiring into the defendant's competency, and despite substantial evidence that the defendant in each of those cases did not have the requisite rational and factual understanding to satisfy the competency standard. *See Pate*, 383 U.S. at 378–85 (noting that the trial court had proceeded with the defendant's trial for shooting his wife without conducting a competency hearing despite evidence that the defendant had a long history of disturbed behavior and delusions, that he had served time in prison for shooting his 18-month old son in a prior erratic episode during which he had also shot himself in the head, and where numerous witnesses testified that the defendant was presently insane at the time of the trial and the prosecutor admitted that a psychological evaluation performed two or three months prior to trial and summarily opining that the defendant knew the nature of the charges against him and was able to cooperate with counsel was not dispositive on the issue of the defendant's competence); *Drope*, 420 U.S. at 164–81 (observing that the trial court had denied the defendant's motion for a continuance so he could be examined and receive psychiatric treatment, that the court had proceeded with the defendant's trial on a rape charge without a competency hearing despite evidence indicating that the defendant had a long history of mental illness and bizarre behavior, and that the court had thereafter proceeded with the trial in the defendant's absence after being informed that the defendant could not appear in court

because he had been hospitalized after shooting himself in the stomach on the second day of trial).

The Supreme Court held that the due process rights of the defendants in *Pate* and *Drope* were violated under the circumstances—that is, where the trial court had required the defendant to stand trial without holding a competency hearing or otherwise inquiring into the defendant's competency despite evidence that raised "a bona fide doubt as to [the] defendant's competence[.]" *Pate*, 383 U.S. at 385 (quotation marks omitted); *see also Drope*, 420 U.S. at 180 (noting that the evidence "created a sufficient doubt of [the defendant's] competence to stand trial to require further inquiry on the question"). But Copeland's competency-based due process claim does not clearly fall within the rule of *Pate* and *Drope* for several reasons.

First, and contrary to *Pate* and *Drope*, the state trial court in this case did not fail to inquire into Copeland's competence when the court was alerted by the parties in May 2007 that her competence was an issue. Instead, the court here obtained a psychological evaluation of Copeland and ultimately entered an order committing her to the Florida State Hospital for residential mental health treatment. Thereafter, the court did not hold any proceedings in Copeland's case until it was notified by the Florida State Hospital—and specifically by Dr. Dellenbarger, who evaluated Copeland on August 13, 2007 after she completed two months of residential mental health treatment—that Copeland had been restored to competency and that she no longer met the requirements

for commitment.  At that time, the court scheduled a competency hearing for Copeland, which hearing occurred on September 5, 2007.

Second, and likewise dissimilar to *Pate* and *Drope*, there was no evidence that raised a "bona fide doubt" as to Copeland's competence at the time of the September 5, 2007 hearing, at the conclusion of which the state trial court accepted Copeland's plea and sentenced her.  On the contrary, all the evidence before the state trial court—including Dr. Dellenbarger's report from August 13, 2007, the prosecutor and defense counsel's stipulations, and Copeland's demeanor and verbal responses in court—indicated that Copeland had been restored to competency after two months of residential treatment intended to achieve that exact purpose, and that at the time of her plea and sentencing on September 5, Copeland had a "present ability to consult with [her] lawyer" and a "rational . . . [and] factual understanding" of the proceedings against her.  *See Dusky*, 362 U.S. at 402.  To that end, Dr. Dellenbarger's report specifically stated that Copeland "demonstrated both a factual and rational understanding of all areas of competency assessed" and that she was "competent to proceed." Copeland's demeanor and presentation in court, including her rational and well-ordered explanation of certain facts surrounding her offense, confirmed her competency.

Copeland emphasizes that she had been deemed incompetent by Dr. Celeste Shuler and committed for residential treatment in June 2007, three months prior to her plea and sentencing

hearing. According to Copeland, federal due process requires that an individual who previously has been deemed incompetent must be "presumed to remain incompetent until being afforded a meaningful competency hearing, where the person is then adjudicated competent to proceed by a court." Again, the state trial court scheduled the September 5, 2007 hearing upon its receipt of a report from Florida State Hospital indicating that Copeland had been restored to competency. The court then opened the hearing by inquiring into Copeland's competency, and it ultimately determined based on the evidence presented at the hearing that Copeland had decided to enter a plea "freely, intelligently, and voluntarily." Accordingly, the record indicates that the state trial court held a hearing during which it inquired into Copeland's competency, and that it determined that she was competent although it did not enter a written order expressly adjudicating her so.

Copeland suggests that the September 5, 2007 hearing was inadequate because the state trial court did not independently consider additional evidence of her competency and, as noted, she argues further that she was presumed to remain incompetent until the court made an express adjudication of her competency. But Copeland does not point to any evidence that the state trial court overlooked or that would have led the court to question her competency as of September 5, 2007. *See Moore v. Campbell*, 344 F.3d 1313, 1324 (11th Cir. 2003) ("A defendant who was at the pertinent time competent to stand trial is not entitled to a new trial on the procedural ground that the trial judge in his initial trial failed to

hold a competency hearing."). Moreover, Copeland does not cite, and we have not found, any Supreme Court authority that requires the additional procedures for which she argues or that imposes a presumption of continuing incompetency until the trial court expressly enters an express adjudication of competency. *See Medina v. California*, 505 U.S. 437, 446 (1992) ("The rule that a criminal defendant who is incompetent should not be required to stand trial has deep roots in our common-law heritage. . . . By contrast, there is no settled tradition on the proper allocation of the burden of proof in a proceeding to determine competence." (quotation marks and citation omitted)). Those requirements are not mandated by *Pate* or *Drope*, the Supreme Court cases cited by Copeland in support of her § 2254 petition.

In fact, the presumption of continuing incompetency and express adjudication requirement cited by Copeland arise not from Supreme Court precedent, but instead from Florida Rule of Criminal Procedure 3.212. *See* Fla. R. Crim. P. 3.212(c)(7). Florida Rule 3.212 provides that "[i]f, at any time after [a defendant's] commitment [for treatment to restore competency], the court decides, after hearing, that the defendant is competent to proceed, it shall enter its order so finding and shall proceed." *Id.* As interpreted by the Florida Supreme Court, Florida Rule 3.212 requires that "[a]n individual who has been adjudicated incompetent is presumed to remain incompetent until adjudicated competent to proceed by a court." *See Dougherty v. State*, 149 So.3d 672, 676 (Fla. 2014) (quotation marks omitted). Per *Dougherty*, Florida law arguably

requires a more extensive competency hearing than occurred here, as well as a written order of competency to proceed, when a defendant previously has been adjudicated incompetent. *See id.* at 677–78 ("[B]ased on our precedent and the procedural rules for competency determinations, a defendant cannot stipulate that he is competent, particularly where he has been previously adjudicated incompetent during the same criminal proceedings. Further, if a trial court finds that a defendant is competent to proceed, it must enter a written order so finding.").

But even assuming, without deciding, that the state trial court failed to comply with Florida Rule 3.212 and *Dougherty* when it accepted Copeland's plea and sentenced her without entering an order expressly adjudicating her competent, that failure does not warrant federal habeas relief under § 2254. *See Reese*, 675 F.3d at 1290. As discussed above, Copeland does not cite, and we have not found, any Supreme Court authority that clearly mandates the specific procedures advocated for by Copeland under the circumstances of this case. Further, all the evidence before the state trial court at the time of Copeland's plea and sentencing on September 5, 2007—including Dr. Dellenbarger's psychological evaluation on August 13, 2007 concluding that Copeland had been restored to competency after two months of residential treatment, the prosecutor and defense counsel's stipulations, and Copeland's demeanor and verbal responses in the courtroom—indicates that Copeland was in fact competent to proceed at that time. *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1257 (11th Cir. 2002) (holding, on

facts similar to this case, that the state appellate court's rejection of a defendant's competency-based due process claim "implicitly reflects a conclusion that all of the facts considered together were not sufficient to raise a bona fide doubt" as to the defendant's competence at the time of trial). Therefore, the Florida appellate court's rejection of Copeland's competency-based due process claim was not contrary to or an unreasonable application of clearly established federal law, as required to support federal habeas relief under § 2254.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying Copeland's § 2254 petition for federal habeas relief.